IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ADDISON J. ISAACS | § | |
| | § | |
| v. | § | CIVIL CASE NO. 4:23-CV-000519-AGD |
| | § | |
| COMMISSIONER, SSA | § | |
| | § | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Addison J. Isaacs brings this appeal for judicial review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g), denying his claim for disability insurance benefits and supplemental security income. After reviewing the briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the court finds that the Commissioner's decision should be **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

On August 6, 2021, Plaintiff filed an application for disability insurance benefits and supplemental security income under Title XVI of the Social Security Act (Dkt. #13 at p. 1; TR 221–22). Plaintiff asserts an alleged onset of disability date of March 10, 2018 (Dkt. #13 at p. 1). On December 13, 2021, Plaintiff's claims were initially denied (TR 131), and upon reconsideration on August 2, 2022, Plaintiff's claims were again denied (TR 142). On September 2, 2022, Plaintiff requested an administrative hearing ("Hearing") (TR 146), which was held telephonically before an Administrative Law Judge ("ALJ") on January 23, 2023 (TR 39). At the Hearing, the ALJ heard testimony from Plaintiff, Plaintiff's representative, and a vocational expert ("VE") (TR 39–69). On February 6, 2023, the ALJ issued a decision denying Plaintiff's claims (TR 15–38). On April 12, 2023, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner (TR 1–6). On June 7, 2023, Plaintiff initiated the

instant lawsuit by filing a Complaint (Dkt. #1). On September 6, 2023, Defendant filed an Answer and the Administrative Record (the "Record") (Dkt. #5). On October 18, 2023, the court ordered the Parties to file briefs (Dkt. #12). On December 5, 2023, Plaintiff filed a brief (Dkt. #13). On February 5, 2024, Defendant filed a brief (Dkt. #16). On February 20, 2024, Plaintiff filed a Reply (Dkt. #17).

## II.   STATEMENT OF RELEVANT FACTS

### 1. *Age, Education, and Work Experience*

Plaintiff was born on March 15, 1987, making him 30 years old at the time of alleged onset of disability (TR 97). Plaintiff's age classification at all relevant times was that of a "younger person." *See* 20 C.F.R. § 404.1563(c). Plaintiff served in the military and has past relevant work experience as a field artillery crew member, a station attendant, and an auto mechanic (TR 32). The ALJ found that Plaintiff has not engaged in substantial gainful activity ("SGA") since March 10, 2018, the date of Plaintiff's alleged onset date of disability (TR 20).

### 2. *Relevant Medical Records*

Relevant to these conditions and the arguments raised by Plaintiff are the medical opinions and evaluations from providers Jeanne Hines, Ph.D. and Ashley Gartner Sutton, Psy.D. In June 2022, Plaintiff attended a consultative examination via video-teleconference (TR 864). The exam was conducted by Dr. Hines and supervised by Dr. Sutton (TR 864). Dr. Hines noted Plaintiff had not undergone any inpatient hospitalization; however, he received one month of counseling at the VA hospital (TR 865). Plaintiff reported that he is able to drive and manage his own bills but that he prefers to "stay away from people" most of the day (TR 866). While Plaintiff reported that he had "suicidal ideations," Dr. Hines noted that he "did not report any current suicidal or homicidal ideation, plan, or intent." (TR 867). Plaintiff's thought content appeared to be appropriate and he

reported no hallucinations or perceptual disturbances (TR 867). Plaintiff appeared to be oriented to person, place, time, and situation (TR 868). Plaintiff could recall three of three words on immediate recall, and two of the three words by independent recall (TR 868). Plaintiff's insight and judgment appeared satisfactory (TR 868). Dr. Hines opined that Plaintiff had significant deficits due to his mental impairments, including memory loss, concentration, comprehension, recall, remembering, and carrying out both one, two, and multistep instructions (TR 268). Dr. Hines also noted that Plaintiff had difficulty maintaining effective social interaction with peers and adults and difficulty coping with normal stress levels (TR 869).

### 3. *Hearing Testimony*

#### a. **Plaintiff's Testimony**

On January 23, 2023, the ALJ held a telephonic hearing (TR 39–69). Plaintiff answered questions regarding his work history, personal life, symptoms, and limitations related to work and engaging in daily life activities (TR 43–63). With respect to his mental health, Plaintiff testified that he struggles in crowds and occasionally experiences panic when driving due to Post Traumatic Stress Disorder ("PTSD") (TR 51–52). Plaintiff further testified that he has participated in an intensive outpatient program for his mental health, and is open to participating in another inpatient or outpatient program for the same (TR 52). Plaintiff explained that he has trouble focusing, which he attributes to Attention Deficit Hyperactivity Disorder ("ADHD") (TR 53). Plaintiff also testified that he has PTSD-related nightmares most nights that affect his functionality during the day (TR 55). Plaintiff testified that he does not handle confrontation well and that his Irritable Bowel Syndrome ("IBS") requires frequent and extended bathroom breaks (TR 58).

### b. VE's Testimony

The ALJ posed two hypotheticals to the VE and asked whether a person with such limitations in the hypothetical could perform the described work (TR 64–67). As to the first hypothetical, the ALJ asked:

> Q: All right, I'm going to ask you to assume a hypothetical individual of the claimant's age, education, with the past work that you described. Further assume this individual could perform work at the light exertional level as defined in the regulations but with the following. Can perform frequent stooping and crouching. From a mental standpoint can understand, remember, and carry out detailed but less than complex instructions, tasks, and work duties, and can make detailed but less than complex work-related decisions or judgements, can maintain attention, concentration, and pace sufficiently to perform detailed but less than complex work tasks, can tolerate occasional workplace changes. For interaction, can have frequent but not constant interaction with supervisors and coworkers and occasional interaction with the general public. Starting with that hypothetical, could such an individual perform any of the past work that you described?
>
> A: Okay, one moment. Obviously, could not do the field artillery crew member. Could not do the mechanic. Could not do the car salesman. Let me check one thing on the station attendant. Stooping and crouching, okay, could do the station attendant.
>
> Q: Okay. And in the alternative, would there be other work in the national economy that could be performed?
>
> A: Your Honor, I have a power screwdriver operator, DOI code 699.685-026, SVP 2, light duty, and I have 237,459. One moment, I just want to make sure the posturals are accurate. I have a cleaner, DOT code 323.687-014, SVP 2, light duty, and I have 177,783. And I have a marker, DOT code 209.587-034, SVP 2, light duty, and I have 136,733.

(TR 66–67). The ALJ then posed a second hypothetical:

> Q: Under hypothetical number 2, if I do have an individual with what was presented under number 1 but if I add an additional limitation, if the individual due to residuals from psychologically based symptoms, difficulty concentrating and focus[ing], they're going to need some additional work breaks in the form of two additional unscheduled breaks of 15 minutes each in duration, would there be any change to your testimony regarding the availability of past work or other work in the national economy?

(TR 67). The VE responded as follows:

> A: Yes, Your Honor. If a person were to take two additional unscheduled 15-minute breaks per day on a consistent continuous basis there would be no competitive employment in the national economy and that is based on my education and my experience placing people in jobs and following them vocationally.
>
> Q: Okay. And then otherwise, has your testimony been consistent with information found in the Dictionary of Occupational Titles?
>
> A: Yes.
>
> Q: Okay. And then as the interaction was broken out between specific individuals, supervisors, coworkers, the public, does the DOT, you know, describe it and discuss it with that specificity?
>
> A: No. That, again, is based on my experience placing people in jobs and, you know, learning about jobs and observing jobs.

(TR 67). Plaintiff's attorney representative also questioned the VE:

> Q: How much can an employee be off task and still maintain gainful employment?
>
> A: Anything above 10 percent is going to cause a problem and would lead to termination, in my experience.
>
> Q: Okay. And how many days can an employee miss per month and still maintain gainful employment?
>
> A: In my experience, anything over one day absent a month on a consistent and continued basis will not be tolerated, so there would be no competitive employment.
>
> Q: Thank you. Has your testimony in that regard been consistent with the DOT?
>
> A: No, that's based on my experience placing people in jobs and following them vocationally and my training and education.

(TR 68).

### III. FINDINGS OF THE ALJ

#### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant

5

suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful activity at the time of his disability claim is not disabled. *Id.* at § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. *Id.* at § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* at § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he can perform his past work based on his residual functional capacity. *Id.* at § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. *Id.* at § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation (TR 20–34). At step one, the ALJ found that Plaintiff has not engaged in SGA since the alleged onset date of disability, March 18, 2018 (TR 20). At step two, the ALJ found that Plaintiff had severe impairments for lumbar degenerative disc disease, obesity, major depressive disorder; generalized anxiety disorder, and PTSD (TR 21). At step three, the ALJ determined that Plaintiff has "no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (TR 22). At step four, the ALJ determined that Plaintiff has the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to frequent stooping and crouching. Mentally, he can understand, remember, and carry out detailed, but less than complex, instructions, tasks, and work duties. He can make detailed, but less than complex, work-related decisions or judgments. He can maintain attention, concentration, and pace sufficiently to perform detailed, but less than complex, work tasks. He can tolerate occasional workplace changes. He can have frequent, but not constant, interaction with supervisors and coworkers, and occasional interaction with the general public.

(TR 25). Continuing the step four analysis, the ALJ determined that Plaintiff is able to perform his past relevant work as a station attendant as well as noted that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform[.]" (TR 33). Finally, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 10, 2018, the date of the alleged onset of disability (TR 34).

## IV.   STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'" *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (internal quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are

resolved by the ALJ; the court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Social Security Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. § 423(d). "Substantial gainful activity" is determined by the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

## V. ANALYSIS

Because the court finds that the ALJ used proper legal standards and that her decision was supported by substantial evidence with respect to Plaintiff's mental impairments, the court recommends that the decision of the Commissioner be affirmed.

### 1. *The "Special Technique" & RFC Determination*

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *Id.* at § 404.1520a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. *Id.*; *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001). For most listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings. 20 C.F.R. § 404.1520a(b–c). "Paragraph B" contains four broad functional areas representing a persons' mental functioning in a work setting: (1)

understand, remember, or apply information; (2) interact with others; (3) concentration, persistence, or pace; and (4) adapt or manage oneself. *Id.* at § 404.1520a(c)(3). The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. *Id.* at § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. *Id.* at § 404.1520a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at step two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. *Id.* at § 404.1520a(d)(l). If the ALJ finds that the mental impairment is severe at step two, then the ALJ must determine at step three if it meets or equals a listed mental disorder of the Listing. *Id.* at § 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. *Id.* If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. *Id.* at § 404.1520a(d)(3); *Boyd*, 239 F.3d at 705.

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC is the most that a claimant is able to do despite his physical and mental limitations, and is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. §§ 416.945, 416.920(a)(4). In determining a claimant's RFC, "the adjudicator

9

must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *4 (N.D. Tex. July 27, 2021), *report and recommendation adopted*, No. 1:20-CV-003-H-BU, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021) (citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.")). Generally, there is "no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe." *Id.* at *5. Additionally, "[i]n determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the ALJ is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citations omitted).

### 2. *The ALJ's Analysis*

Here, Plaintiff argues that the ALJ found Dr. Hines and Dr. Sutton's opinions unpersuasive "but failed to engage in a legally sufficient analysis of the persuasiveness of the opinion." (Dkt. #13 at p. 9). Specifically, argues Plaintiff,

> [t]he ALJ's rejection of the opinions of these psychiatric consultative examiners as being inconsistent "the mental health treatment records" followed by a listing of a few cherry-picked mental status examination findings (with notably no further explanation as to how these findings purportedly contradict the limitations assessed by the examiners) is exactly the sort of ambiguous reference to the record that is not permitted.

(Dkt. #13 at p. 10). Defendant argues that "the ALJ properly considered the consultative examiners' opinion, the relevant medical evidence as a whole, and Plaintiff's own subjective

10

statements; she explained her considerations and interpretation of the entirety of the record; and she properly assessed Plaintiff's RFC finding that is supported by the record as a whole." (Dkt. #16 at pp. 5–6). The court finds that the ALJ's decision contains discussions of Dr. Hines and Dr. Sutton's opinions as to Plaintiff's mental impairments such that the ALJ's decision complied with the relevant legal standards and is supported by substantial evidence.

With respect to Plaintiff's mental impairments, the ALJ found that Plaintiff has severe impairments for generalized anxiety disorder, major depressive disorder, and PTSD (TR 21). The ALJ further found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15." (TR 23). In reaching this conclusion, the ALJ addressed the paragraph B criteria:

> In understanding, remembering, or applying information, the claimant has a mild limitation. He reported difficulty with memory, as well as understanding and following instructions (Ex. B9E/7). He reported no associated problems with driving or managing his bills (Ex. B9E). Some exams noted racing thoughts (e.g., Exhibit B9F/74, 84, 95, 104), but treatment notes reflect no persistent deficits in memory with logical and goal-directed thought processes, average intelligence, and adequate fund of knowledge (e.g., Ex. B6F/7-8, 13, 35; B8F/5-7; B9F/28, 37, 46, 56, 65, 74, 84, 95, 105). The consultative examiner found the claimant could recall two of three objects after a delay with an ability to correctly spell WORLD in reverse as well as recite the months of the year backwards. His remote and working memory were intact (Ex. B8F/5-7). In light of the foregoing, the undersigned finds the claimant has no more than a mild limitation in understanding, remembering, or applying information.
>
> In interacting with others, the claimant has a moderate limitation. He reported difficulty getting along with others, and reported he was fired for problems interacting with others (Ex. B9E/7). He reported no regular social activity and anxiety in crowds, but goes shopping for groceries once a month and works part time as a driver (Ex. B9E). Treatment notes regularly indicated the claimant was cooperative and pleasant, with good eye contact, normal speech, and normal behavior (e.g., Ex. B6F/7-8, 13, 35; B8F/5-7; B9F/4-10, 18-19, 27-28, 36-37, 45-46,55-56,64-65,73-74,83-84, 94-95, 104-105). Based on all this information, the undersigned finds the claimant has a moderate limitation in this domain, which does limit his ability to interact with others, as indicated within the residual functional capacity outlined below.

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He reported difficulty with concentration and completing tasks (Ex. B9E/7). He reported no associated problems with driving or managing his bills, but difficulty focusing on TV shows (Ex. B9E). Treatment notes reflect fair attention and concentration with no abnormal thought content (e.g., Ex. B6F/7-8, 13, 35; B9F/4-10, 18-19, 27-28, 36-37, 45-46,55-56,64-65,73-74,83-84, 94-95, 104-105). The consultative examiner found he could spell 'world' backward, and name the months of the year backwards without error (Ex. B8F/5-7). The undersigned finds, based on all this information, the claimant has a moderate limitation in this domain, which limits him to the performance of detailed tasks, as indicated below.
>
> As for adapting or managing oneself, the claimant has a moderate limitation. He reported problems handling stress and changes in routine (Ex. B9E/8). The claimant reported he drives his children to school, can prepare meals, and manage his bills (Exs. B9E; B8F/4; Hearing testimony), which is suggestive of generally intact mental day-to-day functioning. Treatment notes reflect that he is appropriately dressed and groomed for appointments, cooperative with medical staff, generally compliant with prescribed treatment, and exhibits fair insight and judgment (e.g., Ex. B6F/7-8, 13, 35; B9F/4-10, 18-19, 27-28, 36-37, 45-46,55-56,64-65,73-74,83-84, 94-95, 104-105). Based on all this information, the undersigned finds the claimant has a moderate limitation in this domain, which limits him to only occasional workplace changes, as more fully outlined below.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(TR 23–24). The ALJ also discussed the evidence as it pertained to Plaintiff's mental health at step four and incorporated those findings into Plaintiff's RFC. With respect to Dr. Gartner and Dr. Hines, the ALJ stated as follows:

> Consultative examiners Ashley Gartner, Psy.D., and Jeanne Hines, Ph.D., opined that the claimant has significant deficits, including with memory loss, concentration, comprehending, recalling, remembering and carrying out both one to two step and multi-step instructions, has significant deficits related to persisting in tasks at a reasonable pace, difficulty related to maintaining effective social interaction with peers and adults, and difficulty related to coping with normal levels of stress (Ex. B8F/7). The undersigned finds their opinion unpersuasive, as well as vague, with no specific functional limitations. The opinion is also vague as the statement provides little analysis of the functional limitations that lead to the conclusions. In addition to the analysis above, the statement is not consistent with the examiner's own mental status examination and the mental health treatment records. Significant deficits are not supported by their exam, which noted a tangential thought processes, appropriate thought content, an anxious and

12

> depressed mood, somewhat labile affect, satisfactory insight and judgment, and found he could recall two of three words after a delay, spell 'world' backward, and name the months of the year backwards without error (Ex. B8F). Treatment notes reflect intermittent deficits in mood and affect, fair to good eye contact, fair attention, fair memory, and limited insight and judgment, inconsistent with their opinion and warranting a limitation to detailed instructions and limited interaction with supervisors, coworkers, and the public (Exs. B3F at 10; B6F at 7, 13, 26, 35; B7F at 30, 58, 106, 141, 155, 170; B9F at 9-10, 19, 27, 37, 46, 55, 64, 73, 84, 95, 104). In this regard, Dr. Gartner's and Dr. Hines' assessment has been found unpersuasive.

(TR 32). The ALJ's analysis at step four also contains an extensive discussion of the evidence of record (TR 25–32). For example, the ALJ stated that

> [t]he claimant reported working driving for rideshares in January of 2022. He reported that Celexa, Buspar, and gabapentin had not been effective (Ex. B6F/7). He complained of a depressed mood, decreased concentration, social anxiety, irritability, and being easily fatigued. Mental status exams in January, March, and May of 2022 noted he was cooperative and well-groomed with intermittent mood deficits, a restricted affect, logical thought process, unimpaired attention and concentration, unimpaired memory, fair insight and judgment, and a gait within normal limits (Ex. B6F/7, 13, 26, 35). Records indicate he participated in a TOVA test in November of 2022 with results suggestive of a possible attention deficit (Ex. B10F/4).

(TR 28). In light of the evidence, the ALJ explained that

> while the record as a whole does support some limitation, it does not document the level of deficit alleged. Records reflect no history of psychiatric hospitalizations, and treatment notes reflect no persistent deficits in memory or concentration. He has usually been able to initiate, cooperate, and participate in his treatment (e.g., Ex. B1F – B7F; B9F). There have been some abnormal mental findings, but he has not had significantly abnormal findings on a consistent basis. Some exams noted racing thoughts (e.g., Exhibit B9F/74, 84, 95, 104), but treatment notes reflect no persistent deficits in memory with logical and goal-directed thought processes, average intelligence, and adequate fund of knowledge (e.g., Ex. B6F/7-8, 13, 35; B8F/5-7; B9F/28, 37, 46, 56, 65, 74, 84, 95, 105).

(TR 29). The ALJ also noted that the RFC assessment "reflects the degree of limitation [] found in the 'paragraph B' mental function analysis." (TR 25).

The court finds that the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence. First, "[c]onflicts in the evidence are for the Secretary and not

13

the courts to resolve" and as such, "[t]his court may not reweigh the evidence or try the issues de novo." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *see Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022) ("We will not 're-weigh the evidence' or 'substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision.'") (citation omitted). While Plaintiff argues that "the record reveals ample support for the limitations assessed by the consultative examiners[,]" there is also substantial evidence[1], discussed by the ALJ, supporting the ALJ's RFC determination. Accordingly, the court declines Plaintiff's invitation to reweigh the evidence in his favor.

Additionally, the ALJ addressed the supportability and consistency as to Dr. Hines and Dr. Sutton's opinions. *See* 20 C.F.R. § 404.1520c. With respect to supportability, the ALJ found their opinion "unpersuasive, as well as vague, with no specific functional limitations. The opinion is also vague as the statement provides little analysis of the functional limitations that lead to the conclusions." (TR 32). With respect to consistency, the ALJ stated as follows:

> In addition to the analysis above, the statement is not consistent with the examiner's own mental status examination and the mental health treatment records. Significant deficits are not supported by their exam, which noted a tangential thought processes, appropriate thought content, an anxious and depressed mood, somewhat labile affect, satisfactory insight and judgment, and found he could recall two of three words after a delay, spell 'world' backward, and name the months of the year backwards without error (Ex. B8F). Treatment notes reflect intermittent deficits in mood and affect, fair to good eye contact, fair attention, fair memory, and limited insight and judgment, inconsistent with their opinion and warranting a limitation to detailed instructions and limited interaction with supervisors, coworkers, and the public (Exs. B3F at 10; B6F at 7, 1 , 26, 35; B7F at 30, 58, 106, 141, 155, 170; B9F at 9-10, 19, 27, 37, 46, 55, 64, 73, 84, 95, 104).

(TR 32). Such discussion satisfies the supportability and consistency factors.

---

[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021).

This court came to a similar conclusion in *Williams v. Comm'r of Soc. Sec. Admin.*, No. 5:23CV68-RWS-JBB, 2024 WL 2807937 (E.D. Tex. May 9, 2024), *report and recommendation adopted*, No. 5:23-CV-68-RWS-JBB, 2024 WL 2805632 (E.D. Tex. May 31, 2024). There, the court found that the ALJ's discussion was adequate because "the ALJ not only considered the medical opinions of Dr. Grant and Dr. Rattan, but he also provided a sufficient explanation for why he rejected those opinions." *Williams*, 2024 WL 2807937, at *15. Specifically, the court explained that

> [t]he ALJ found both opinions were unsupported by findings on examination and that they were not consistent with the medical record as a whole (Tr. 30). For instance, Dr. Grant observed on examination that Plaintiff was cooperative; demonstrated no evidence of a thought disorder or tangential thinking; had good abstract thinking; displayed adequate memory, concentration, and persistence; worked at a good pace; and had good judgment (Tr. 315-317). Similarly, Dr. Rattan noted that Plaintiff was polite, did not have a thought disorder, and had intact memory (Tr. 439-440). Thus, the ALJ considered whether these opinions were supported by Drs. Grant's and Rattan's own examination findings. See 20 C.F.R. § 416.920c(c)(1) (ALJ considers whether opinion is supported). In addition, other examination notes show Plaintiff had an appropriate mood, clear thought process, normal memory, good concentration, normal thought content, and normal judgment (Tr. 26-31, 322, 332, 347, 453, 456).

*Id.* at *15. The court affirmed the Commissioner's decision and held that "[t]he ALJ therefore considered whether Drs. Grant's and Rattan's opinions were consistent with the record." *Id.* at *15. Likewise, here, the court finds that the ALJ's decision followed proper legal standards and is supported by substantial evidence with respect to Plaintiff's mental limitations such that remand is not warranted.

### VI. CONCLUSION

It is therefore **ORDERED** that the Commissioner's decision is **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

15

judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 8th day of September, 2025.**

_____
AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE